UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEBASTIAN MARTINEZ-MUNOZ,

Petitioner,

v.

TROY GOODNOUGH, *et al.*,

Respondents.
_______________________________/

Case No. 4:26-cv-12632

F. Kay Behm
United States District Judge

**OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1) AND DENYING RESPONDENTS' MOTION TO VACATE TEXT-ONLY ORDER ENJOINING TRANSFER (ECF No. 9) AS MOOT**

## I. PROCEDURAL HISTORY

On July 30, 2026, Petitioner Sebastian Martinez-Munoz, a Colombian citizen, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he is being unlawfully detained by Respondents at the Monroe County Jail in Monroe, Michigan. ECF No. 1. Respondents are Monroe County Sheriff Troy Goodnough, Warden of the Monroe County Jail, Monroe County Jail Administrator Julie Massengill, Secretary of the U.S. Department of Homeland Security Markwayne Mullin, U.S. Attorney General Todd Blanche, Acting Director of the U.S. Immigration and Customs Enforcement Detroit

Field Office Robert Lynch, Director of U.S. Immigration and Customs Enforcement David Venturella, Monroe County Sheriff's Office, U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, and U.S. Department of Justice. *Id*.

Respondents filed an initial response in opposition to the petition on August 14, 2026. ECF No. 8. On October 7, 2026, the Court ordered supplemental briefing on the issue of whether Petitioner was arrested pursuant to a valid warrant or whether the warrant was issued after his arrest. ECF No. 11. Those briefs have now been submitted. ECF Nos. 14, 15. In addition, on October 16, 2026, Petitioner filed a notice with the Court indicating that he had requested and was denied a bond review hearing. ECF No. 12. The Court ordered Respondents to file a response to the notice, which was submitted along with their supplemental brief (ECF No. 14), and Petitioner has now filed a reply (ECF No. 16). The matter is now ready for consideration.

For the reasons set forth below, the petition for a writ of habeas corpus is **GRANTED**, all Respondents except for the ICE Field Office Director are **DISMISSED**, and Respondents' motion to vacate the text-only order enjoining transfer (ECF No. 9) is **DENIED AS MOOT.**

## II. FACTUAL BACKGROUND

On November 12, 2022, shortly after entering the United States, Petitioner presented himself at a port-of-entry in El Paso, Texas, before Department of Homeland Security (DHS) officials. ECF No. 1, PageID.14; ECF No. 8-2, PageID.61. Petitioner was detained and subsequently released on parole. ECF No. 1, PageID.14. On October 31, 2024, Petitioner encountered immigration officials and was charged with inadmissibility under 8 U.S.C. § 1182(a)(6) and (7) because he was without a valid immigration document. ECF No. 8, PageID.47; ECF No. 8-4, PageID.67. A Notice to Appear was issued at that time. ECF No. 8-4, PageID.64.

On July 8, 2026, Petitioner presented at his appointment with DHS officials in Miramar, Florida. ECF No. 1, PageID.14. A warrant was issued for his arrest the same day. ECF No. 8-6, PageID.71. Petitioner was detained for two days before DHS officials transferred Petitioner to the Krome North Service Processing in Miami, Florida, where he was detained until July 13, 2026. ECF No. 1, PageID.15. During the night of July 13, DHS officials transferred Petitioner to Louisiana, where he was then transferred to the Monroe County Jail in Monroe, Michigan, where he remains. *Id.* His removal proceedings are ongoing. *Id.*, PageID.15.

On July 13, 2026, Petitioner had filed an initial petition for a writ of habeas corpus in the United States District Court for the Southern District of Florida. ECF No. 1, PageID.2. After he was transferred, the court expressed concerns over its ability to serve the proper respondent, which led Petitioner to file a notice of voluntary dismissal on July 27, 2026. *Id.* Petitioner then refiled his petition in this Court on July 30, 2026. ECF No. 1. The same day, the Court entered a text-only order enjoining Respondents from transferring, relocating, or removing Petitioner from the Eastern District of Michigan without further order of this Court and pending final resolution of this matter. *July 30, 2026 text-only order*. On August 14, 2026, Respondents filed a motion to vacate the text-only order. ECF No. 9.

On October 15, 2026, Petitioner appeared before the Detroit Immigration Court to request bond, but the Immigration Court found that it had no jurisdiction to adjudicate Petitioner's bond request because of his status as an "arriving alien." ECF No. 12, PageID.108; ECF No. 12-1, PageID.110.

## III. LEGAL STANDARD

Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all

cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). Petitioner brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which authorizes a district court to grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." *Phillips v. Court of Common Pleas*, 668 F.3d 804, 809 (6th Cir. 2012) (quoting 28 U.S.C. § 2241(c)(3)). Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

## IV. ANALYSIS

Petitioner argues that his detention is unlawful because Respondents re-detained him without providing an individualized hearing in violation of the Due Process Clause of the Fifth Amendment. ECF No. 1, PageID.2. He also argues that his arrest was unlawful because he was arrested without a warrant. *Id.*, PageID.15. He requests immediate release, or alternatively, a bond review hearing.

Respondents argue first that all respondents except for the warden of petitioner's detention center should be dismissed, and that Petitioner should be required to exhaust his administrative remedies by requesting a bond hearing. ECF No. 8, PageID.49, 53. In their initial response, they also argued

that Petitioner is being held under 8 U.S.C. § 1226(a) and could request a bond hearing but simply had not done so at the time. *Id.*, PageID.51-54. In response to Petitioner's notice that he requested a bond review hearing and was denied, Respondents now argue that Petitioner's counsel misled the immigration judge into finding that there was no jurisdiction, and that his petition therefore should be denied. ECF No. 14.

**A. Proper Respondent**

Respondents argue that the only the warden of petitioner's detention center is the proper respondent but say that, alternatively, "if the Court finds that petitioner's immediate custodian is the individual with supervisory legal authority over his detention, then only the ICE District Director is the proper respondent." ECF No. 8, PageID.50. As this Court has previously explained in depth, *see Cervantes-Munoz v. Raycraft*, 831 F. Supp. 3d 505, 511 (E.D. Mich. 2026), the proper Respondent is the ICE Field Office Director. All other Respondents will therefore be dismissed.

**B. Exhaustion of Administrative Remedies**

Respondents also argues briefly that Petitioner should be required to exhaust his administrative remedies before bringing this petition. However, Congress has not mandated exhaustion in these types of cases, and the

decision is therefore within the sound discretion of the Court. *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). As explained at length in this Court's prior decisions, the Court agrees with the majority of district courts in this circuit and around the nation in deciding not to enforce an exhaustion of administrative remedies requirement for these kinds of habeas petitions. *See Casio-Mejia v. Raycraft*, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases).

**C. Parole Status**

Petitioner's first argument is that his detention is unlawful because his release was revoked without an individualized hearing in violation of the Fifth Amendment's Due Process Clause. The record before the Court indicates that after entering the United States on November 12, 2022, Petitioner was released from detention pursuant to a grant of parole under § 212(d)(5)(A) of the Immigration and Nationality Act (INA); 8 U.S.C. § 1182(d)(5)(A). *See* ECF No. 8-3, PageID.63, Form I-94. His parole was granted for a period of two months, from November 13, 2022, through January 13, 2023. *Id.*

Under 8 U.S.C. § 1182(d)(5)(A), the Secretary of Homeland Security may, in their discretion and on a case-by-case basis, parole noncitizens for humanitarian reasons of significant public benefit. Parole under this section

is not considered an admission, and once the purposes of the parole have been served, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* However, before terminating a previously granted parole, "DHS must comply with the applicable regulatory and statutory requirements." *Malpica v. Raycraft*, No. 1:26-CV-1989, 2026 WL 2105749, at *2 (W.D. Mich. July 22, 2026) (quoting *Norfolk S. Ry. Co. v. U.S. Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at *6 (6th Cir. Dec. 2, 2022) ("[A]n agency's action that fails to observe the procedures required by its own regulations should be set aside.")).

8 C.F.R. § 212.5(e)(2)(i) governs the termination of parole, providing that:

> In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

Under paragraph (e)(1),

> Parole shall be automatically terminated without written notice
>
> (i) upon the departure from the United States of the alien, or,
>
> (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

8 C.F.R. § 212.5(e)(1).

Petitioner's parole expired on January 13, 2023; therefore, the procedural requirements for revocation of parole under § 1182(d)(5)(A) do not apply because Petitioner's parole had ended by the time he was re-detained. *See Malpica*, 2026 WL 2105749 at *2 ("Here, 'the time for which parole was authorized' expired prior to Petitioner's arrest. Therefore, the 'procedural protections attendant to the revocation of § 1182(d)(5)(A) parole,' including 'written notice,' did not apply at the time of Petitioner's arrest and detention."); *Nieves v. Dir. of Enf't & Removal Operations*, No. 2:26-CV-11748, 2026 WL 2066379, at *5 (E.D. Mich. July 17, 2026) ("Petitioner's parole expired by its own terms on December 7, 2022. Therefore, the government did not decide to revoke his parole without process; it simply ended."). As

Petitioner's parole had expired by the time he was re-detained, his Due Process rights related to revocation of his parole are not implicated.

### D. Relevant Statutory Framework

In arguing that the failure to provide him with a pre-deprivation hearing violated his due process rights, Petitioner asserts that, as a noncitizen who was released on parole and whose grant of parole was subsequently terminated, he was returned to custody under § 235(b) of the INA; 8 U.S.C. § 1225(b) and subject to mandatory detention. Petitioner's argument relies on a *Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025), which found that "an alien detained under section 235(b) who is released from detention pursuant to a grant of parole under section 212(d)(5)(A), and whose grant of parole is subsequently terminated, is returned to custody under section 235(b) pending the completion of removal proceedings." This, he says, means that when his parole was terminated, he automatically returned to the status of a noncitizen "seeking admission" under Section 1225(b). Respondents argued initially that Petitioner is detained under 8 U.S.C. § 1226(a) and that he could request a bond hearing but had not done so. Respondents also pointed out that the arrest warrant indicates that Petitioner was arrested pursuant to § 236 of the INA, or 8 U.S.C. § 1226. In their response to Petitioner's notice,

Respondents continue to assert that Petitioner is entitled to a bond review hearing, but now argue that he waived his claims under the doctrine of invited error because he questioned the immigration court's jurisdiction even though the court was prepared to proceed to the merits of his bond review, which led the immigration court to find that it did not have jurisdiction over his bond review request.

The Court notes at the outset that the parties' positions in this case are perplexing. In his petition, Petitioner does not argue that he is being illegally held under § 1225(b). Instead, he appears to argue that his detention is properly governed by § 1225(b) and that he is not entitled to a bond hearing under *Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025). The Court is unable to understand why he would take this position. Further, Respondents are the ones who argue that Petitioner is entitled to a bond review hearing, but now that he has requested one and been denied, they blame him for inviting error before the immigration judge when it appears from the transcript that his counsel only pointed out to the judge that he had been paroled. Despite these confounding positions, the Court nonetheless undertakes an analysis to determine the proper authority for Petitioner's detention under the Sixth Circuit's recent decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th

Cir. 2026), and ultimately agrees with Respondents that Petitioner is entitled to a bond review hearing, but disagrees that he "invited error" and finds instead that his request for a bond review hearing was wrongfully denied.

The two provisions at issue are related provisions of the Immigration and Nationality Act: 8 U.S.C. § 1225(b)(2), and 8 U.S.C. § 1226(a). Congress established these two statutes to principally govern detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. Section 1225 is a mandatory detention provision that states, in relevant part:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225 applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1). All applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant "seeking admission is not clearly and beyond a doubt entitled to be admitted," they "*shall* be detained for" standard removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The only exception to this

mandatory detention provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

Section 1226, on the other hand, provides for a discretionary detention framework. It states, in relevant part:

> (a) **Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General...

8 U.S.C. § 1226(a). "Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions." *Lopez*-Campos, 175 F.4th at 722.

In *Lopez-Campos*, the Sixth Circuit held

> for a noncitizen to be "seeking admission" under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer. Noncitizens like Petitioners, who did not attempt lawful entry into the United States and are actively avoiding being

> inspected for lawful entry, are not "seeking admission" and are thus not subject to § 1225(b)(2)(A)'s mandatory detention scheme.

*Id.* at 723. Under this reasoning, Section 1226(a) properly applies to those in Petitioner's position who were originally granted parole and who remained in the United States after that parole expired but were no longer "seeking admission." Petitioner's parole expired nearly four years ago. It would be counterintuitive to find that for these last four years, he has been "seeking admission" simply due to his having been paroled at one point. *See also Ismoilov v. Maydak*, No. CV 26-185-DLB, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) ("By remaining in the country undetected after his parole expired, Ismoilov obtained similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having knowledge of their whereabouts."); *Munoz Soto v. Raycraft*, 834 F. Supp. 3d 767, 771 (S.D. Ohio 2026) ("Because Petitioner was inspected at the border and paroled into the interior of the country, he cannot now be an 'arriving alien' who is 'seeking admission,' such that he must be subjected to mandatory detention under Respondents' interpretation of § 1225(b)."); *Malpica*, 2026 WL 2105749 at *2 (concluding that the petitioner's detention

was governed by § 1226(a), rather than § 1225(b), where petitioner was originally paroled but his parole expired prior to his arrest).

Under section 1226(a), Petitioner is entitled to a bond review hearing. He requested one and was denied. Respondents now argue that he has waived any due process claim he had on that basis by inviting error before the immigration judge. ECF No. 14, PageID.124 (quoting *United States v. Woods*, 61 F.4th 471, 481 (6th Cir. 2023) ("[W]e generally adhere to 'the principle that a party may not complain on appeal of errors that he himself invited or provoked the court to commit.'"); *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023) ("[I]nvited error is a 'branch' of waiver.")). Respondents argue that this is the case because at the outset of the bond review hearing, both DHS and the immigration court were prepared to proceed to the merits of the request, but instead of simply requesting release on bond, Petitioner "questioned the immigration court's jurisdiction and claimed that he was statutorily ineligible for release on bond based on an incorrect statement of fact—that he had been paroled into the United States." *Id*. Respondents now argue that Petitioner was never paroled *into* the United States, but instead entered the United States unlawfully, was apprehended, and then was

paroled. *Id.* Petitioner argues that the duty of candor required Petitioner's bond attorney to disclose his prior parole. ECF No. 16.

From the transcript of the proceedings before the immigration judge, the following exchange took place between Jose Manuel Godinez Samperio, appearing for Petitioner; Veronica Eric, appearing for the DHS; and the immigration judge:

Judge: So I see that you submitted the Government's, not this -- not DHS, but the US Attorney's Office, it appears to be a reply to a habeas, but I don't think that jurisdiction is even contested by the Government here. Is the Government contesting that I have jurisdiction?

Eric: No, Your Honor.

Judge: So I don't even think that's the issue. Mr. Samperio, I see -- unless I missed it, I didn't see a copy of the application for relief. Did you still want to go forward without that –

Samperio: Your Honor –

Judge: I'm sorry, go ahead.

Samperio: Your Honor, we actually had a question about jurisdiction as well. The habeas is still pending, it hasn't been adjudicated and that's why we're here. So if Your Honor doesn't think we have jurisdiction, then –

Judge: No, we do have jurisdiction.

Samperio: We do?

Judge: It’s undisputed, yeah.

Samperio: Okay, okay. Interesting. Okay. But—

Judge: I mean, he’s an arriving alien, right?

Samperio: Well, he came here under parole, so based on –

Judge: I didn’t realize that.

Samperio: Yeah.

Judge: Then there is an issue. Let me – I hadn’t reviewed the 213 because it’s just been issued. So he was paroled in?

Samperio: He was, Your Honor.

Judge: Okay. Yeah, so I, so I am – so I, I don’t believe that I have jurisdiction.

Judge: So is, is the Government aware that he was paroled in?

Eric: It does say that he was paroled in, yes.

Judge: But do you believe that I have jurisdiction?

Eric: No, I'm sorry, I misunderstood when you -- I misunderstood.

Judge: Okay.

Eric: Yes, we are aware that he was paroled in.

Judge: All right. So I'll just enter an order finding that I have no jurisdiction because he’s an arriving alien. I'm sure,

> Mr. Samperio, you'll submit that with your habeas petition.

ECF No. 14-4, PageID.146-148.

This exchange can hardly be characterized as Petitioner's attorney "inviting error," and this argument in general borders on disingenuous. Jurisdiction was being discussed, and in response to a question from the judge, Petitioner's attorney responded that Petitioner had been paroled, and based on that, the judge found a lack of jurisdiction. At no point did Petitioner's bond attorney mislead the immigration judge, and Respondents have provided no authority for the assertion that if Petitioner's attorney had specified that Petitioner was apprehended *and then* released on parole, the judge would have concluded differently.

Ultimately, as laid out above, Petitioner is entitled to a bond review hearing under Section 1226(a): a point which counsel for Respondents does not disagree with. But even though counsel has argued that Petitioner is entitled to a bond review hearing, the reality is that when he requested one, he was denied. There is therefore a disconnect between Respondents and their counsel, with the result being that Petitioner is in federal custody in violation of federal law. For this reason, and because he was arrested without

a warrant, as will be discussed further below, the petition will be granted and Petitioner's immediate release ordered.

### E. Warrant

Petitioner also argues that his detention is unlawful because he was arrested prior to issuance of a warrant. Specifically, Petitioner argues that the warrant was issued *after* his arrest, violating the agency's internal regulations and rendering the agency actions unlawful under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954), which allows a court to set aside an agency action that violates the agency's own regulations. Although Respondents initially argued that Petitioner's argument was not supported by the record, in their supplemental briefing, Respondents admit that Petitioner was arrested without a warrant and that "officials issued a warrant for his arrest a short time later on the same day while officers were processing him for detention." ECF No. 14, PageID.119. Because the Court finds that Petitioner's warrantless arrest was unlawful, it will grant his petition and order his immediate release.

Petitioner was arrested and detained under Section 1226(a), which states that "[o]n a warrant issued by the Attorney General, an alien may be

arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 C.F.R. 236.1(b)(1) provides that

> At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter.

And under 8 C.F.R. § 287.8(c), a warrant is required unless "the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." In other words, a warrant is required to arrest a noncitizen under Section 1226(a), unless there is a belief that the individual is likely to escape before a warrant can be obtained, which is not established on these facts, nor do Respondents argue it.

Respondents' argument that the regulation does not prohibit an immigration officer from making an arrest and obtaining a warrant after the fact has no support in either the regulations or case law. In fact, many courts that have considered this issue have come to the opposite conclusion, and for good reason. *See, e.g.*, *Jefferson G.H.L. v. Blanche*, No. CV 26-2344 (JRT/ECW), 2026 WL 1229623, at *2 (D. Minn. May 5, 2026) ("Because the warrant was not served until after he arrived at the Sherburne County Jail,

such warrant is invalid. Because the warrant is invalid, Petitioner's detention under 8 U.S.C. § 1226 is unlawful." (citation omitted)); *Hernandez v. Jamison*, No. 26-CV-7606, 2026 WL 3034460, at *2 (E.D. Pa. Oct. 9, 2026) ("Hernandez's warrantless arrest is unlawful in that it was in violation of Section 1226(a)."); *Sagbay v. Jamison*, No. CV 26-7265, 2026 WL 2875765, at *5 (E.D. Pa. Sept. 24, 2026) ("Petitioner's arrest without an administrative warrant issued at the time is also a violation of § 1226(a), the statute under which the government claims he was detained."); *Martiniez Alaniz v. Slaughter*, No. CV-26-298-GF-BMM, 2026 WL 2874994, at *2 (D. Mont. Sept. 24, 2026) ("The Court reiterates that this Court and many others have disapproved of late-issued arrest warrants and notices to appear in the specific immigration context."); *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 410 (E.D.N.Y. 2026) ("Using an after-the-fact warrant to justify a prior arrest is constitutionally problematic. It also is statutorily prohibited under the INA.").

Ultimately, the "practice of after-the-fact arrest warrants can be called many things—illegal, improper, and unconstitutional, among them. But whatever label one wishes to apply, the practice is fundamentally at odds with and offensive to lawful, constitutional behavior in this country." *Parada Cruz*, 2026 WL 1027441, at *5. Because Petitioner was arrested without a

warrant, his arrest was unlawful under Section 1226(a), and the Court finds that this, in addition to the denial of Petitioner's request for a bond review hearing despite his entitlement to one, justifies immediate release as the appropriate remedy. *See Jefferson G.H.L.*, 2026 WL 1229623, at *3 ("Because ICE failed to comply with federal immigration law when arresting and detaining Petitioner and because Respondents have not justified Petitioner's continued detention, release is the proper remedy."); *Martiniez Alaniz*, 2026 WL 2874994, at *6 ("The Court determines that immediate release proves appropriate, available, and proper in this case to remedy the constitutional and statutory violations committed by the Government against Montejo Lopez."). *Sagbay*, 2026 WL 2875765, at *5 ("Because Petitioner's detention did not occur '[o]n a warrant issued by the Attorney General,' it was unlawful under § 1226(a) in addition to violating procedural due process. The proper remedy for Petitioner's unlawful detention is release."); *Munoz Soto*, 834 F.Supp.3d at 772 ("Therefore, because anything short of release would almost certainly subject Petitioner 'to the hardship of [continued] mandatory detention without due process,' the Court may order release in accordance with its broad discretion 'to dispose of habeas corpus matters as law and

justice require.'" (quoting *Lopez-Campos*, 175 F.4th at 735; *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987))).

Further, because Respondents have troublingly argued that "if the Court were to order [Petitioner's] release because of a warrant violation, officers could simply issue a new warrant and then re-arrest petitioner the moment he leaves the door of his detention center," ECF No. 14, PageID.127, the Court also finds it necessary to impose additional restrictions on his further detention, as laid out below.

## V. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus (ECF No. 1) is **GRANTED**, as follows:

1. Respondents are **ORDERED** to release Petitioner from custody **within 24 hours from entry of this Order**, along with all of his personal effects.

2. It is **FURTHER ORDERED** that Petitioner may not be re-detained pursuant to 8 U.S.C. § 1226(a) during the pendency of his removal proceedings absent a hearing before an immigration judge, held with adequate notice, to determine whether detention is appropriate. At such a hearing, the government has the burden of establishing by clear and convincing evidence that detention is appropriate.

3. Respondents are **FURTHER ORDERED** to certify compliance with this Order promptly, and in any case, no later than **48 hours from entry of this Order.**

It is **FURTHER ORDERED** that all Respondents except for Acting ICE Field Office Director are **DISMISSED** without prejudice.

Finally, Respondents' motion to vacate the text-only order enjoining Petitioner's transfer pending final resolution of this matter (ECF No. 9) is **DENIED AS MOOT**.

The Court retains jurisdiction to enforce the terms of this Order.

**SO ORDERED.**

Date: October 22, 2026
at 4:45 P.M.

s/F. Kay Behm
F. Kay Behm
United States District Judge